**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, the STATE OF ARKANSAS on behalf of the Arkansas Department of Environmental Quality, the IDAHO DEPARTMENT OF ENVIRONMENTAL QUALITY, the STATE OF KANSAS, STATE OF MONTANA ex rel. DEPARTMENT OF ENVIRONMENTAL QUALITY,  the STATE OF NEBRASKA on behalf of the Nebraska Department of Environmental Quality, the STATE OF OREGON on behalf of the Oregon Department of Environmental Quality, the STATE OF UTAH on behalf of the Utah Department of Environmental Quality, the WASHINGTON STATE DEPARTMENT OF ECOLOGY, and the PUGET SOUND CLEAN AIR AGENCY | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) NO: 13-cv-2299 JTM/DJW<br>) |
| Plaintiffs, | ) |
| v. | ) |
| ASH GROVE CEMENT COMPANY | ) |
| Defendant. | ) |

**COMPLAINT**

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"), the State of Arkansas on behalf of the

Arkansas Department of Environmental Quality, the Idaho Department of Environmental Quality

the State of Kansas, the State of Montana on behalf of the Montana Department of

Environmental Quality, the State of Nebraska on behalf of the Nebraska Department of

Environmental Quality, the State of Oregon on behalf of the Oregon Department of

Environmental Quality, the State of Utah on behalf of the Utah Department of Environmental

Quality, the Washington State Department of Ecology, and the Puget Sound Clean Air Agency

(collectively, the "Plaintiffs") allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought against Defendant Ash Grove Cement Company,

("Ash Grove" or "Defendant"), pursuant to Sections 113(b) and 167 of the Clean Air Act

("Clean Air Act or Act"), 42 U.S.C. §§ 7413(b) and 7477, for injunctive relief and the

assessment of civil penalties for violations of one or more of the following statutory and

regulatory requirements of the Act at one or more of Defendant's Portland cement plants which

collectively are located in nine (9) different states within the United States: the Prevention of

Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-7492; and/or the

nonattainment New Source Review ("nonattainment NSR" or "NNSR") provisions of the Act, 42

U.S.C. §§ 7501-7515; the New Source Performance Standards ("NSPS") provisions of the Act,

42 U.S.C. § 7411; the federally-approved and enforceable state implementation plans ("SIPs"),

which incorporate and/or implement the above-listed federal PSD and/or nonattainment NSR

requirements and NSPS requirements; Title V of the Act, 42 U.S.C. §§ 7661-7661f; and Title

V's implementing federal and state regulations.

2.      The Plaintiffs seek an injunction ordering Defendant to substantially reduce its

emissions of sulfur dioxide ("$SO_2$"), nitrogen oxides ("$NO_x$"), and particulate matter ("PM") by

undertaking remedial measures and operational improvements at all nine of its Portland cement

manufacturing facilities in the United States in such a manner that would resolve Defendant's violations, alleged herein, of the PSD, NNSR, NSPS, and Title V requirements of the Act.

JURISDICTION AND VENUE

3.     This Court has jurisdiction of the subject matter herein and over the Parties consenting hereto pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b), 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367(a).

4.     Venue is proper in this District pursuant to Section 113(b) of the Act, 42 U.S.C. §§ 7413(b), and under 28 U.S.C. §§ 1391(b) and (c) and 1395(a).

NOTICES

5.     EPA has provided notice of the violations alleged herein to Defendant and to each of the states where Defendant's Facilities identified in this Complaint are located, and to the Puget Sound Clean Air Agency, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a).

6.     More than thirty days have elapsed since the notice referred to in the preceding paragraph.

7.     The United States has provided notice of the commencement of this action to each state where a Portland cement plant identified in this Complaint is located, and to the Puget Sound Clean Air Agency, in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b).

8.     Ash Grove is a Kansas corporation and a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

9.     At times relevant to this Complaint: Ash Grove has owned and operated cement plants located in or near Chanute, Kansas; Durkee, Oregon; Foreman, Arkansas; Inkom, Idaho; Leamington, Utah; Louisville, Nebraska; Midlothian, Texas; Montana City, Montana; and Seattle, Washington.

3

STATUTORY AND REGULATORY BACKGROUND

The National Ambient Air Quality Standards

10.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for certain criteria air pollutants.  The primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.  Pursuant to Section 109, 42 U.S.C. § 7409, EPA has identified and promulgated NAAQS for $SO_2$, nitrogen dioxide ("$NO_2$"), a form of $NO_x$, ozone, particles with an aerodynamic diameter less than or equal to 10 micrometers ("$PM_{10}$"), and particles with an aerodynamic diameter less than or equal to 2.5 micrometers ("$PM_{2.5}$") as such pollutants.  40 C.F.R. §§ 50.4, 50.5, 50.6, 50.7, 50.9, 50.10, 50.11 and 50.13.

11.     Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

12.     Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  Designations that have been approved by EPA are set forth at 40 C.F.R. Part 81.  An area that meets the NAAQS for a particular pollutant is designated as an "attainment" area with respect to such pollutant.  An area that does not meet the NAAQS for a particular pollutant is designated a "nonattainment" area with respect to such pollutant.  An area that cannot be designated for a particular pollutant due to insufficient data is termed "unclassifiable" with respect to such pollutant.

4

The Prevention of Significant Deterioration Requirements

13.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for

those areas designated as either attainment or unclassifiable for purposes of attaining the

NAAQS standards.   These requirements are designed to protect public health and welfare, to

assure that economic growth will occur in a manner consistent with the preservation of existing

clean air resources and to assure that any decision to permit increased air pollution is made only

after careful evaluation of all the consequences of such a decision and after public participation

in the decision-making process.

14.     Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the

construction and subsequent operation of a major emitting facility in an area designated as

attainment or unclassifiable unless a PSD permit that comports with the requirements of Section

165 has been issued and the facility employs the best available control technology ("BACT") for

each pollutant emitted from the facility that is subject to regulation under the Act.  Portland

cement plants with the potential to emit one hundred (100) tons per year ("tpy") or more of any

air pollutant are "major emitting facilities" in accordance with Section 169(1) of the Clean Air

Act, 42 U.S.C. § 7479(1), which defines "major emitting facility" for certain listed stationary

sources, including Portland cement plants.

15.     Sections 110(a) and 161 of the Act, 42 U.S.C. §§ 7410(a) and 7471, require each

state to adopt a SIP that contains emission limitations and such other measures as may be

necessary to prevent significant deterioration of air quality in areas designated as attainment or

unclassifiable.

16.     A  state may comply with Sections 110(a) and 161 of the Act by being delegated

by EPA the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by

having its own PSD regulations approved as part of its SIP by EPA.  State PSD regulations must

be at least as stringent as those set forth at 40 C.F.R. § 51.166.  Each of the states at issue in this

matter has had, at relevant times, either a delegated or an approved PSD program.   All citations

herein to the provisions of 40 C.F.R. § 52.21 and 40 C.F.R. Part 51 are to the provisions of 40

C.F.R. § 52.21 and 40 C.F.R. Part 51 as they appeared at times relevant to the claims in this

Complaint.

      17.     Arkansas, Idaho, Kansas, Montana, Nebraska, Oregon, Texas, and Utah all have

approved SIPs for implementation of the PSD program. *See* 40 CFR Part 52, Subpart E –

Arkansas; Subpart N – Idaho; Subpart R – Kansas; Subpart BB – Montana; Subpart CC –

Nebraska; Subpart MM – Oregon; Subpart SS – Texas; Subpart TT – Utah.   The State of

Washington operates a PSD program delegated by EPA, and the provisions of 40 C.F.R. § 52.21,

except paragraph 40 C.F.R. § 52.21(a)(1), are incorporated into the State of Washington SIP.  40

C.F.R. § 52.2497(a) and (b).

      18.     Under the PSD regulations, "major stationary source" is defined to include any

Portland cement plant which emits or has the potential to emit 100 tpy or more of any regulated

air pollutant.  40 C.F.R. § 52.21(b)(1)(i)(a).

      19.     As set forth at 40 C.F.R. § 52.21(i), any major stationary source in an attainment

area that intends to construct a major modification must first obtain a PSD permit.  "Major

modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as meaning any physical change in or

change in the method of operation of a major stationary source that would result in a significant

net emission increase of a regulated NSR pollutant.  "Significant" is defined at 40 C.F.R. §

52.21(b)(23)(i) in reference to a net emission increase or increase in the potential of a source to

emit any of the following pollutants, as a rate of emissions that would equal or exceed any of the following: 40 tpy for $SO_2$, 40 tpy for $NO_x$, and 25 tpy for PM.

20.      As set forth at 40 C.F.R. § 52.21(j), a new major stationary source or a major modification in an attainment area shall apply BACT, as defined at 40 C.F.R. § 52.21(b)(12) and 42 U.S.C. § 7479(3), for each pollutant subject to regulation under the Act for which the modification would result in a significant net emissions increase.  The PSD regulations further require, among other things, that any application for a PSD permit must be accompanied by an analysis of ambient air quality in the area.  40 C.F.R. § 52.21(m).

21.      Pursuant to the PSD regulations, any owner or operator who commences construction of, or who operates, a major modification at a major stationary source without first applying for and receiving approval for construction of the major modification and without applying BACT is in violation of the Act.  40 C.F.R. § 52.21(r)(1); *see also* 40 C.F.R. § 52.23.

The Nonattainment New Source Review Requirements

22.      Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth requirements in areas designated nonattainment for the NAAQS.  Sections 110(a)(2)(C) and (I) of the Act, 42 U.S.C. §§ 7410(a)(2)(C) and (I), require that each SIP contain a program meeting the requirements of Part D of the Act for the preconstruction review and permitting of new and modified stationary sources located in areas designated as "nonattainment" for a criteria pollutant pursuant to Section 107(d) of the Act, 42 U.S.C. § 7407(d).

23.      Part D sets forth attainment dates and SIP submission dates, as well as the requirement that each SIP in a nonattainment area must be approved by EPA.  The nonattainment NSR permitting program requirements are set forth in Section 173 of the Act, 42 U.S.C. § 7503, and in the implementing regulations at 40 C.F.R. §§ 52.24, 51.165, and Part 51, Appendix S.

The nonattainment NSR requirements include a permit program that authorizes permits to construct, modify, or operate major sources or major modifications in nonattainment areas only if in accordance with regulations issued by EPA, including the following requirements that:  a) the source demonstrate sufficient emission offsets; b) the source complies with the lowest achievable emission rate ("LAER"); c) the owner or operator of the proposed source demonstrates that all of its major sources within the state are in compliance with their emission limits; d) the nonattainment provisions of the SIP are being properly implemented by the state; and e) an analysis of alternative sites, sizes, production processes and environmental controls has been considered and the benefits of the proposed source outweigh the environmental social costs imposed as a result of the construction or modification.  A major source proposing to construct or make a modification in a nonattainment area may be allowed to construct or modify, and thereafter to operate the newly modified facility, only if these requirements (as set forth more specifically in the regulations) are met.  These requirements are referred to herein as the "nonattainment NSR regulations."

24.     At relevant times, the nonattainment NSR regulations at 40 C.F.R. §§ 52.24, 51.165 and Part 51, Appendix S, have defined "major stationary source" to include, *inter alia*, any stationary source of air pollutants which emits, or has the potential to emit, 100 tpy or more of any pollutant subject to regulation under the Act or any physical change that would occur at a stationary source not otherwise qualifying as a major stationary source, if the change would constitute a major stationary source itself.

25.     At relevant times, under the nonattainment NSR regulations, "major modification" has been defined at 40 C.F.R. §§ 52.24(f), 51.165(a)(1)(v)(A) and Part 51, Appendix S, II. A.5.(i) as meaning, any physical change or change in the method of operation of

a major stationary source that would result in a significant net emission increase any pollutant subject to regulation under the Act.

26.    At relevant times, under the nonattainment NSR regulations, "significant" has been defined at 40 C.F.R. §§ 52.24(f), 51.165(a)(1)(x) and Part 51, Appendix S, II. A.10(i)., and under the nonattainment NSR regulations as meaning a rate of emissions that would equal or exceed any of the following:  40 tpy for $SO_2$, 40 tpy for $NO_x$, and 25 tpy for PM.

27.    A state or regional air authority must comply with Sections 172 and 173 of the Act, 42 U.S.C. §§ 7502 and 7503, by having its own nonattainment NSR regulations, which must be at least as stringent as those set forth at 40 C.F.R. § 51.165 and approved by EPA as part of its SIP.

28.    Arkansas, Idaho, Kansas, Montana, Nebraska, Oregon, Texas, Utah, Washington, and the Puget Sound Clean Air Agency all have approved SIPs for the nonattainment NSR program. *See* 40 CFR Part 52, Subpart E – Arkansas; Subpart N – Idaho; Subpart R – Kansas; Subpart BB – Montana; Subpart CC – Nebraska; Subpart MM – Oregon; Subpart SS – Texas; Subpart TT – Utah; Subpart WW – State of Washington and the Puget Sound Clean Air Agency.

Title V Permit Requirements

29.    Title V of the Act, Sections 501-507, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources" and any other source required to have a PSD permit.  Section 502(a) of the Act, 42 U.S.C. § 7661a(a).

30.    Pursuant to Section 502(b) of the Act, 42 U.S.C. § 7661a(b), on July 21, 1992, EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a permit program to be administered by any air pollution control agency. 57 Fed. Reg. 32250 (July 21, 1992).  These regulations are codified at Part 70.

31.     Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and 40 C.F.R. 70.7(b) have at all relevant times made it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a subject source except in compliance with a permit issued by a permitting authority under Title V.

32.     Section 504(a) of the Act, 42 U.S.C. § 7661c(a), and 40 C.F.R. §§ 70.7(b) and 70.6(a) have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Act and the requirements of the applicable SIP.  These requirements include any PSD and nonattainment NSR requirements, including the requirement to comply with an emission rate that meets BACT and/or LAER.

33.     Section 503(c) of the Act, 42 U.S.C. § 7661b(c), provides that any person required to have a Title V permit must submit to the permitting authority a compliance plan describing how the source will comply with all applicable requirements and an application for a permit signed by a responsible official who must certify the accuracy of the information submitted.

34.     The federal Title V regulations at 40 C.F.R. § 70.5 have at all relevant times required any owner or operator of a source subject to Title V permitting requirements to submit a complete permit application, which, among other things, identifies all applicable requirements (including any relevant PSD and nonattainment NSR requirements and the requirement to meet BACT pursuant to PSD and LAER pursuant to nonattainment NSR), certifies compliance by a responsible official with all applicable requirements with which the source is in compliance, and contains a compliance plan for all applicable requirements for which the source is not in compliance.

35.     Where a Title V permit application contains incorrect information or additional requirements become applicable to the source following submission of an initial permit application but prior to release of a draft permit, a Title V permit applicant is required to submit supplementary facts or corrected information as necessary to the permitting authority.  40 C.F.R. § 70.5(b).

36.     Arkansas, Idaho, Kansas, Montana, Nebraska, Oregon, Texas, Utah, Washington, and the Puget Sound Clean Air Agency all have approved Title V programs which include regulations that are in accordance with the Federal Title V regulations.

### ENFORCEMENT PROVISIONS

37.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that the Administrator of EPA may bring a civil action in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b), whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, the PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); the nonattainment NSR requirements at Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515; Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or the PSD and nonattainment NSR requirements of each relevant state SIP.

38.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator of EPA to initiate a judicial enforcement action for permanent or temporary injunction and/or for a civil penalty against any person whenever such person has violated, or is in violation of, *inter alia*, the requirements or prohibitions described in the preceding paragraph.  Pursuant to Section 113(b), 42 U.S.C. § 7413(b), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the Administrator of EPA

may seek civil penalties of up to $25,000 per day for each violation occurring on or before

January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31,

1997 and up to and including March 15, 2004; up to $32,500 per day for each such violation

occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to

$37,500 per day for each such violation occurring after January 12, 2009.

   39.  Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator of EPA to

initiate an action for injunctive relief, as necessary to prevent the construction, modification or

operation of a major emitting facility which does not conform to the PSD requirements in Part C

of the Act.  Moreover, the States have independent statutory authority to obtain relief for the

violations alleged in this complaint. *See* Arkansas Code §§ 8-4-310 and 8-4-311; Idaho Statutes

§§ 39-108 and 39-109; Kansas Code §§ 65-3011 and 65-3012; Montana Code Annotated 75-2-

413; Nebraska Revised Statutes §§ 81-1507, 81-1508.01, and 81-1508.02; Oregon Revised

Statutes § 468.035; Utah Code §§ 19-2-104 and 19-2-107; Washington Revised Code §§ 70-94-

425 and 70.94.431.

FIRST CLAIM FOR RELIEF
(PSD/Nonattainment NSR Violations)

   40.  Paragraphs 1 through 39 are realleged and incorporated herein by reference.

   41.  Defendant produces and/or at relevant times has produced cement at each of the

cement plants listed in paragraph 9 by, among other things, burning raw materials in a kiln.

   42.  Each of the plants identified in paragraph 9 at relevant times has been a major

emitting facility and major stationary source subject to the PSD or the nonattainment NSR

requirements of the Act identified above.

   43.  EPA has conducted investigations of Defendant's plants, which included review

of permitting history and emissions data, and analysis of other relevant information obtained

12

from Defendant concerning construction and operation of the plants. The United States alleges the following based on the results of EPA's investigations, information, and belief.

44.     Since the initial construction of the plants referred to in paragraph 9, one or more of Defendant's plants identified in paragraph 9 has undergone a major modification within the meaning of the PSD or nonattainment NSR provisions. Such major modifications have resulted in a significant net emissions increase of $SO_2$, $NO_x$, and/or PM.

45.     On information and belief, the modifications referred to in Paragraph 44 include but are not necessarily limited to the following physical changes to Portland cement manufacturing Kilns 1, 2, and 3 at Ash Grove's facility in Midlothian, Texas: 1) in or around 1995, Ash Grove performed a project to re-route ductwork that transports hot air from Midlothian Kiln 1 to the coal mill and performed a project to enable Kiln 1 to burn waste whole tires as a fuel source; 2) in or around 1995, Ash Grove performed a project to re-route ductwork that transports hot air from Midlothian Kiln 2 to the coal mill and performed a project to enable Kiln 2 to burn waste whole tires as a fuel source; and 3) in or around 1995, Ash Grove performed a project to re-route ductwork that transports hot air from Midlothian Kiln 3 to the coal mill and performed a project to enable Kiln 3 to burn waste whole tires as a fuel source.

46.     On information and belief, the modifications alleged in Paragraph 44 include but are not necessarily limited to the following physical changes to Portland cement manufacturing Kiln 1 at Ash Grove's facility in Leamington, Utah, including a major plant expansion that Ash Grove performed at Kiln 1 in or around 2005, and a project to upgrade the primary air fan and motor at Kiln 1 and installation of a burner pipe in or around 2007.

47.     On information and belief, the modifications alleged in Paragraph 44 include but are not necessarily limited to the following physical changes to Portland cement manufacturing

13

Kiln 1 at Ash Grove's facility in Clancy, Montana, including: 1) a project to install new kiln drives and to modify and improve the kiln shell and clinker cooler in or around 1992; 2) a project to enlarge kiln discharge to increase production in or around 1996; and 3) a project to improve the clinker cooler at Kiln 1 in or around 2006.

48.     Following the major modifications referred to in paragraphs 44-47, Defendant has been in violation at one or more of Defendant's plants of either:

a.  Section 165(a) of the Clean Air Act, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21, and the corresponding SIP containing PSD requirements approved by EPA pursuant to Section 110(a)(2)(C), 42 U.S.C. § 7410(a)(2), by failing to undergo PSD review for major modifications which caused significant net emissions increases of $SO_2$, $NO_x$ and/or PM, by failing to obtain a PSD permit, and by failing to install and operate BACT for control of such air pollutants; or

b.  the nonattainment NSR permitting programs that EPA implements pursuant to Section 110(a)(2)(C) and (I), 42 U.S.C. § 7410(a)(2)(C) and (I), and 40 C.F.R. § 52.24, 40 C.F.R. § 51.165 and 40 C.F.R. Part 51, Appendix S, or which EPA has approved as part of applicable SIPs pursuant to the foregoing provisions, in one or more of the following ways: by failing to apply for and obtain necessary permits prior to construction, by failing to provide complete and accurate information in its permit applications regarding the impact of proposed construction on emissions levels or air quality, by failing to install and operate LAER for the control of $SO_2$, $NO_x$, and/or PM and/or by failing to obtain and operate with federally enforceable emissions offsets at least as great as the modified source's emissions.

14

49.     Unless restrained by an Order of the Court, these violations of the Act and the implementing regulations are likely to continue.

50.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act (for PSD violations), 42 U.S.C. § 7477, and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject each Defendant to injunctive relief and civil penalties of up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring after January 12, 2009.

## SECOND CLAIM FOR RELIEF
### (Title V Violation – Operation with a Deficient Permit)

51.     Paragraphs 1 through 50 are realleged and incorporated herein by reference.

52.     At all times relevant to this Complaint, Defendant's plants identified in paragraph 9 have been a "major source" within the meaning of Section 501(2) of the Act, 42 U.S.C. § 7661(2), the federal implementing regulations at 40 C.F.R. § 70.2 and applicable state Title V regulations.

53.     As set forth in paragraphs 44-47, above, one or more of Defendant's plants identified in paragraph 9 has undergone a major modification within the meaning of the PSD or nonattainment NSR provisions, including, but not limited to, the modifications identified in paragraphs 44-47. Such major modifications have resulted in significant net emission increases of $SO_2$, $NO_x$, and/or PM. As a result, these modifications triggered the requirements to, among other things, obtain a PSD permit and/or nonattainment NSR permit establishing emission limitations that meet BACT and/or LAER and to operate in compliance with BACT and/or LAER. Defendant has failed to comply with these requirements.

54.     Defendant failed to submit a complete application for a Title V operating permit, or to supplement or correct such application and provide additional information to address requirements applicable after the filing of the application, for one or more of its Facilities that underwent a major modification.  In particular, Defendant failed to submit a Title V permit application that:  identified all applicable requirements (including the PSD and/or nonattainment NSR requirements and the requirement to meet BACT pursuant to PSD and/or LAER pursuant to nonattainment NSR); certified compliance by a responsible official with all applicable requirements; and contained a compliance plan for all applicable requirements for which the source was not in compliance, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5 and the applicable state Title V regulations.

55.     Defendant has failed to obtain a proper or adequate Title V operating permit for one or more of its plants subject to PSD and/or nonattainment NSR that contained emission limitations for $SO_2$, $NO_x$, and/or PM that met BACT and/or LAER as required by Section 504(a) of the Act, 42 U.S.C. § 7661c(a), and 40 C.F.R. §§ 70.1(b), 70.6(a), and the applicable state Title V regulations.  As a result, Defendant has operated one or more of its plants without meeting such limitations and without having an operating permit that requires compliance with such limitations or that contains a compliance plan for all applicable requirements for which the plant is not in compliance.  Defendant's conduct has violated and continues to violate Sections 502(a), 503 and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b and 7661c(a), and the related federal operating permit program regulations at 40 C.F.R. Part 70 and the applicable state Title V regulations.  Unless restrained by an order of this Court, these violations will continue.

56.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by

31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring after January 12, 2009.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States, respectfully requests that this Court:

1.      Order Defendant to immediately comply with the state and federal statutory and regulatory requirements cited in this Complaint, under the Clean Air Act;

2.      Order Defendant to remedy its past violations by, among other things, requiring Defendant to employ BACT under PSD or LAER under nonattainment NSR, as appropriate, at the plants at which violations of the Act have occurred for each pollutant subject to regulation under the Act;

3.      Order Defendant to apply for and comply with permits for its respective cement plants that conform to the requirements of the PSD and/or nonattainment NSR provisions of the Act and the applicable SIP, as appropriate, and with Title V of the Act;

4.      Order Defendant to take other appropriate actions to address or offset the unlawful emissions of $SO_2$, $NO_x$, and/or PM attributable to the violations of the Clean Air Act alleged above;

5.      Assess civil penalties against Defendants for up to the amounts provided by applicable law;

6.      Award Plaintiffs their costs of this action; and,

7.      Grant the Plaintiffs such other relief as this Court deems just and proper.

17

Respectfully submitted,

FOR THE UNITED STATES:


ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources
 Division
United States Department of Justice


ANDREW C. HANSON
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-9859 (Tel.)
(202) 616-6584 (Fax)
andrew.hanson2@usdoj.gov


BARRY R. GRISSOM
United States Attorney for the District of Kansas

EMILY METZGER
Assistant U.S. Attorney
1200 Epic Center
301 N. Main
Witchita, Kansas 67202
(316) 269-6481
Emily.metzger@usdoj.gov

FOR THE STATE OF ARKANSAS on behalf of the
Arkansas Department of Environmental Quality:


KENDRA AKIN JONES
Assistant Attorney General
On Behalf of the Arkansas Department
 Of Environmental Quality
323 Center Street, Ste. 400
Little Rock, AR 72201
(501) 682-7383

Date: 4/16/13

DATED this 23rd day of April, 2013.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

LISA J. CARLSON
Deputy Attorney General
Office of the Idaho Attorney General
Natural Resources Division
Environmental Quality Section
1410 N. Hilton
Boise, ID  83706
(208) 373-0494
lisa.carlson@deq.idaho.gov

FOR THE STATE OF KANSAS:


Date: 5/6/13

TIMOTHY E. KECK #14993
Deputy Chief Counsel
Kansas Department of Health and Environment
1000 SW Jackson, Suite 560
Topeka, Kansas 66612

FOR THE STATE OF MONTANA
DEPARTMENT OF ENVIRONMENTAL QUALITY


TRACY STONE-MANNING                                    Date:   4.15.13
Director
Montana Department of Environmental Quality


NORMAN J. MULLEN                                       Date:   4-15-13
Attorney
Montana Department of Environmental Quality

STATE OF NEBRASKA, ex rel NEBRASKA
DEPARTMENT OF ENVIRONMENTAL
QUALITY:

Katherine J. Spohn
Deputy Attorney General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509-8920
Nebraska Bar Number 22979
(402) 471-2682
Email: katie.spohn@nebraska.gov

FOR THE STATE OF OREGON on behalf of the
Oregon Department of Environmental Quality:


_Stephanie M. Parent_

STEPHANIE M. PARENT OSB #925908
Senior Assistant Attorney General
Oregon Department of Justice
Trial Division/Special Litigation Unit
1515 SW Fifth Street, Suite 410
Portland, OR 97201
Phone:  (971) 673-1990
Fax:  (971) 673-5000
Stephanie.M.Parent@doj.state.or.us

FOR STATE OF UTAH, DEPARTMENT OF ENVIRONMENTAL QUALITY:


JOHN E. SWALLOW
Utah Attorney General


DATE: 4-15-13

Christian C. Stephens
Assistant Attorney General, Environment Division
Utah Attorney General's Office
195 North 1950 West
Salt Lake City, UT 84116
cstephens@utah.gov
(801) 536-4137

FOR THE WASHINGTON STATE
DEPARTMENT OF ECOLOGY:

KATHARINE G. SHIREY
Assistant Attorney General
2425 Bristol Court SW, 2nd Floor
P.O. Box 40117
Olympia, WA 98504-0117

Date:  4/16/13

PUGET SOUND CLEAN AIR AGENCY


DATE: 4/1/13

LAURIE HALVORSON
Director - Compliance and Legal
Puget Sound Clean Air Agency
1904 Third Avenue, Suite 105
Seattle, WA 98101
(206) 689-4030